Church, Ch. J.
Two questions are presented in this case: "first, whether the court will entertain jurisdiction of the action; and, second, whether the alleged cause of action is. established.
The learned counsel for the respondents furnished us with no precedent for such an action as this, nor have I been able to find any. A person charged with an infringement of a trade mark, to prevent an action against himself for such an infringement which is threatened and - about to be commenced, commences his action and obtains a temporary injunction, and by the judgment appealed from a *119 permanent injunction, to restrain the defendants from interfering with the use of the alleged trade mark or the business of the plaintiffs, by suits, injunctions or otherwise. In other words, the court has entertained jurisdiction of an action in equity by one person, to restrain another from commencing an equitable action against him for an alleged injury. It is a general rule that a party cannot restrain the commencement of an action to which he has a good defence. (1 Barb. Ch. R., 56; E. D. Smith, 664; 11 How. Pr. R., 174.) The danger of judicial proceedings is not an injury justifying an injunction. (6 Robt., 607.) The learned judge who tried the case, found that a temporary injunction against the plaintiffs would produce a serious injury. This furnishes no justification. In the first place, there is no legal presumption that a temporary injunction would be granted improperly, or without notice and hearing, or if granted that it would not be immediately dissolved, and the defendants fully indemnified. In cases of this description it is the general rule not to grant a temporary injunction, when there is any doubt upon the merits.
One court cannot entertain jurisdiction of an action upon the ground that another court of competent jurisdiction, or another branch of the same court, will decide wrong or improperly. The legal presumption is that every court will decide right, and conduct the proceedings before them fairly, impartially and correctly. By a threatened prosecution, the plaintiffs were not injured in any such sense as entitled them' to invoke the equitable powers of the court.
But it is claimed that the plaintiffs can maintain the action under some general head of equitable jurisdiction. The principal one relied on is to prevent a multiplicity of suits. It is alleged, and found, that the defendants issued a circular to the trade, including the plaintiffs’ customers, threatening, in substance, to prosecute any who should infringe upon their trade mark. There was no reference to the plaintiffs or the plaintiffs’ business except as the facts might apply to them, nor do the plaintiffs show or allege *120 that they were under any obligation or duty to protect the persons thus threatened if they should do the acts thus denounced. It is no ground for equitable interference that •the decision may result in determining the law in a way which will or may have the effect of preventing suits between other parties. Besides, the reference in the circular to the Louisiana decision informed those who chose to investigate the subject that the decision there was against the right to adopt the combination of words used by the defendants, accompanied by imitation of labels, etc.., and the wrongful use of the name of Wolfe. Besides, other persons supposed to be involved are not parties, nor bound by the judgment, nor can they be made so. Story says: “ Courts of equity, therefore, having a power to bring all the parties before them, will at once proceed to the ascertainment of the general right, and if it be necessary they will ascertain it by an action at law, and then make a decree finally binding upon all parties.” (2 Story’s Eq., § 85.) Instances of bills of this nature are by parishioners against a parson, to establish a modus; by a lord against tenants for an encroachment under color of a common right; or by tenants against the lord for disturbance of a common right; by a party in interest to establish a toll by custom; to establish rights to profits of a fair; to establish a right of fishery against numerous riparian proprietors; to establish a right of common, and the like. (Id., § 855, etc.) But here there are no persons interested, in any legal sense, except the plaintiffs. They desire to manufacture and sell gin put up in peculiar shaped bottles and called by a peculiar Dutch name. They have an interest to continue the business, but it is not shown that any one else has or can have. Whether the bottles are square or round, or whether the article is called' “ schnapps,” or gin or anything else, makes no pecuniary difference with those who desire to purchase the article. If it is said that people would purchase it put up in this way, and not if put up otherwise, it would not aid the plaintiffs in establishing the interest' of others, but would only tend to enhance their own interest. Tvhe parties to this action are the *121 only persons legally interested in the result. As to this class of actions Story says: “But to entitle a party to maintain a bill of peace, it must he dear that there is a right claimed which affects many persons and that a suitable number of parties in interest are brought before the court; for if the right is disputed between two persons only, not for themselves and all others in interest, but for themselves alone, the bill will be dismissed, for it cannot conclude any persons but the very defendants.” (§ 857.) hi or can this be claimed as a bill quia timet, within any recognized principle. (Id., § 825.) The fear of a law-suit is not sufficient to justify an equitable interference to prevent it.
The learned judge who delivered the opinion of the General Term justifies the jurisdiction, on the ground that it is an action “ to restrain the repetition of acts akin to a continuous slander upon the plaintiffs’ title.” The defendants are restrained from bringing actions, suing out injunctions, and the like. How such acts can be denominated a slander, continuous or otherwise, of plaintiffs’ title, has not been explained to us. This point was not waived by the defendants’ litigating upon the merits. The objection that no cause of action is set up in the complaint, may be taken at the trial, and it was taken and considered both at Special and General Terms.
Another ground urged against the plaintiffs’ right to invoke the power of a court of equity is that, they come into court in bad faith in respect to the subject-matter of the action. It was found at Special Term that the plaintiffs adopted the word “ schnapps ” with intent thereby to increase the sale of the gin, because of the use of that word by the defendants’ predecessor, to whose rights they have succeeded; and that they used similar shaped packages. It is claimed by the plaintiffs that they have a right to use the word “ schnapps,” because it means gin, or, rather means any alcoholic drink of which gin is one, and that the word was introduced into this country before Udolpho Wolfe applied it to designate his gin. They also claim that they have a. right to use the name of Hudson G. Wolfe because *122 that is the name of a member of the firm. The first, as to the word “ schnapps,” has been expressly found; and an omission to find that the name was used fraudulently, precludes this court from assuming it against the judgment.
It may be that the plaintiffs have avoided liability for an infringement of the name of the article as a trade mark; and yet it is manifest, as found, that they have adopted such a course as is calculated to secure a portion of the good-will of the defendants’ business — to which they have no moral right at least. Competition in business is justifiable and desirable; but a business built up by one man, by the use of peculiar packages and names, should not be appropriated by another by contrivances which, although not strictly within the rule of liability, yet are designed to accomplish a purpose equally injurious. Persons thus situated are not regarded with favor by a court of equity. “ Those who come into a court of equity must come with clean hands and a pure conscience.” (13 Howard’s Pr., per Duer, J.) Indeed, it may be doubted whether either of the parties to this controversy has any peculiar claim to the favorable consideration of a court of equity. They both practice, to a certain extent, a deception upon.the public. The article sold by each is probably the same. It is not claimed to be anything more or less than Holland gin, well known as an alcoholic beverage; and yet each party advertises and offers it for sale as a medicine. The defendants announce that it is a “ superlative tonic, diuretic, anti-dyspeptic and invigorating cordial!” The plaintiffs call it “an invigorating tonic and medicinal beverage.” The defendants assert in their labels that it has extraordinary medicinal efficacy, and the plaintiffs that “ it has no equal,” in numerous specified diseases. Its real name, “gin,” is not mentioned. It is called everything else but what it is. It is not a tonic, or cordial, or medicine of any kind, within the ordinary meaning of those words, and the word “ schnapps” itself, whatever may be its signification in the country from which it was imported, is not generally known to mean gin, and therefore the representations of the *123 parties as to the nature of the article are calculated to deceive. It may be a very good article of gin; and gin, like every other alcoholic beverage may, and probably does, possess some medicinal properties which in some cases, properly prescribed and taken, may be beneficial to the human system; but to palm off this or any other liquor in common use exclusively as a medicine and a specific for certain diseases, under names not generally understood by the community, is a species of fraud which a court of equity should not be called upon to protect. The remarks of Duer, J., in 13 Howard, are appropriate in some degree to this case. See also 8 Simons, 477 ; 6 Beavan, 66; 19 Eng. L. and Eq., 15; Partridge v. Menck (How. Ap. Cases, 547); Upton’s Trade Marks, 31, etc., fully sustaining this doctrine.
I have examined the question involved, upon the merits, and the numerous decisions upon the subject, and I am inclined to think that, under the findings of the court below, which are conclusive upon this court (although not free from question), the decision that the word “ schnapps ” alone, as applied, is not entitled to protection as a trade mark, cannot be disturbed. This decision does not collide with that in Louisiana, because there the whole combination of words was used, including the fraudulent use of the name of Wolfe, which is not found in this case. But it is unnecessary to enter upon the discussion of - the merits or to pass definitely upon any question but the first — that the plaintiffs cannot maintain the action for the reasons stated.
The judgment should be reversed, and the complaint dismissed.
All concur in result.
Judgment accordingly.